IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIJAY KRISHNAN, | ) |
|       Plaintiff, | ) ) ) |
| v. | ) Case No. 20 C 5931 ) |
| LOUIS DeJOY, Postmaster General of the United States Postal Service, | ) Judge Joan H. Lefkow ) ) |
|       Defendant. | ) ) |

**OPINION AND ORDER**

Vijay Krishnan filed this action against Louis DeJoy in his capacity as Postmaster General of the United States Postal Service (USPS), alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and the Rehabilitation Act (Rehab Act), 29 U.S.C. §§ 791 *et seq.* (Dkt. 15.)[1] USPS now moves for summary judgment under Federal Rule of Civil Procedure 56 on all of Krishnan's claims. (Dkt. 25.) For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

**I.    USPS's Objections to Krishnan's Local Rule 56.1 Statement of Additional Material Facts**

USPS objects to numerous statements in Krishnan's Local Rule 56.1(b)(3)(C) Statement of Additional Facts on the grounds that they are not supported by admissible evidence and contain improper argument, in violation of Local Rule 56.1(d) and (e).

---

[1] Krishnan's Title VII claims allege discrimination based on race, gender, and national origin. Krishnan now expressly waives those claims and forfeits argument in opposition to the motion with respect to them.

First, USPS objects to Krishnan's assertions about his supervisors' treatment of other USPS employees. An employee may have personal knowledge of the duties of his coworkers based on observation, but Krishnan's assertions contain baseless speculation about other employees' history of complaints, disability status, and assistance they may have received. As such, the statements in paragraphs four through seven of Krishnan's Statement of Additional Material Facts regarding other employees' disability statuses, protected activity, and receipt of assistance are disregarded.

Second, USPS challenges Krishnan's statements about his confrontations with his supervisors. USPS argues that they contain conclusory allegations and improper argument regarding the supervisors' mental states. While Krishnan's assertions that his supervisors did not care about his accommodation are unsupported speculation, his statements about his supervisors' outward conduct during the confrontations, *i.e.*, whether they yelled at him or appeared angry, are based on his firsthand knowledge, and they are material to his retaliation claim. USPS does not dispute that the confrontations occurred; it merely takes issue with Krishnan's word choice. These statements are based on admissible evidence and are considered insofar as they describe Krishnan's perception of the confrontations.

## II.     Summary Judgment Facts

In August 2019, Krishnan was promoted to the role of City Carrier at the Wilmette Post Office. As a carrier, Krishnan began his day by casing and sorting mail in the office, then proceeding to the street to deliver mail along his usual route. In addition to his regular route, Krishnan was sometimes assigned "relays," shorter deliveries designed to be completed in about fifteen minutes each.

All in all, Krishnan was scheduled to work eight hours daily. Each morning, if Krishnan did not think he could complete his route in eight hours, he could submit a Postal Service 3996

form to request assistance or, according to USPS, he could call the office in the afternoon to request additional help. USPS uses various metrics, such as the volume of mail and the carrier's walking pace, to determine how long each route should take. It uses these metrics to assign the appropriate number of relays or to grant assistance.

Krishnan had several supervisors, but the ones relevant to this case are Lydia Howard, his direct supervisor, and Patricia Estrada, the Postmaster for the Wilmette Post Office. Krishnan came into conflict with both supervisors on numerous occasions.

In September 2019, Krishnan was diagnosed with uncontrolled high blood sugar and high blood pressure. After taking a short medical leave, Krishnan provided USPS with a doctor's note stating that his medical condition required accommodation in the form of an eight-hour work restriction. Two months later, Krishnan lodged an informal complaint with the USPS Equal Employment Opportunity (EEO) office, alleging that his supervisors, including Howard, were not respecting his accommodation. Krishnan withdrew this complaint, and records show that Krishnan did not work more than eight hours a day from the time of his request on September 23, 2019, through February 12, 2020.

The first direct confrontation between Krishnan and Howard occurred in February 2020. One morning, Krishnan submitted a 3996 form to request assistance with the six relay deliveries he had been assigned on top of his regular route. Howard initially acceded to this request but later asked Krishnan to "take back" two of the relays. Krishnan refused. Howard told him that he would be put on emergency leave and that he should hand in his key and go. After speaking with the local postmaster, Howard informed Krishnan that, rather than placing him on leave, she would observe his performance that day. She did not require Krishnan to complete the two relays that she previously had assigned. Howard never gave Krishnan a copy of her observation report,

3

but the observation did not result in any changes to the conditions of Krishnan's employment or his accommodation.

Krishnan and Howard had another confrontation on March 18, 2020. Krishnan informed Howard that he did not have time to take breaks due to his workload, and they discussed the situation with a union representative present. Other USPS employees overheard this discussion, during which Howard criticized Krishnan's performance and accused him of lying, although no party has identified what Krishnan allegedly lied about. The next day, Krishnan filed a formal complaint with the USPS EEO office regarding this conflict and the February incident.

Krishnan had his first dispute with Estrada on or around June 2, 2020. While on medical leave due to the COVID-19 pandemic, Krishnan attended an EEO mediation with Howard and Estrada. During the mediation, the parties discussed the February and March incidents and Krishnan's eight-hour work schedule accommodation. At some point after the mediation, Estrada yelled at Krishnan in front of other employees and asked him if he could do math, apparently referring to USPS's metrics.

The next series of incidents began the week of June 30, after Krishnan returned from leave. Krishnan presented another doctor's note reiterating his eight-hour work restriction. Time card records show that he worked 8.38 hours on June 30, 8.12 hours on July 1, and 8.38 hours on July 2, and received assistance on each of these days.

Then, on July 6, Estrada conducted an inspection of Krishnan's route. Krishnan believed he was entitled to advance notice of the inspection, but it is unclear whether notice was required or ordinarily provided to carriers. The parties dispute much of what happened during the inspection. It is undisputed, however, that Estrada required Krishnan to use a different vehicle from the one he normally drove and to drive faster than he usually did. The only evidence

regarding Estrada's reason for conducting the inspection on July 6 is her testimony that she and the other supervisors had until September 25, 2020, to conduct annual inspections for all carriers and routes.

That day, USPS's metrics projected that it would take Krishnan less than eight hours to complete his usual route plus four relay assignments. At around 3:30 p.m., with one hour left of his shift, Krishnan reminded Estrada of his eight-hour work restriction. Krishnan had completed his usual route and only had his four relay assignments left, which should have taken about an hour to complete according to USPS's calculations. Claiming that Krishnan could finish the four relays before his shift ended, Estrada told Krishnan to press on. Krishnan maintains that he could not have finished the relays in time, and, indeed, he worked 9.85 hours that day.

On Krishnan's next day at work, July 8, he left early to go to the hospital due to anxiety, which he says was caused by his supervisors denying him assistance that morning. Krishnan complained twice more to the USPS EEO office that month.

Estrada did not provide Krishnan a copy of her inspection report for several months, but on certain days after the inspection, she had other employees sort and case Krishnan's mail so that he could start his route right away. Krishnan then obtained a new doctor's letter, which stated that he could only perform six hours of street work a day, necessitating that he do at least some office work during his eight-hour shift. There is no evidence that this restriction was violated.

Finally, Krishnan alleges a smattering of similar workplace conflicts occurring between the end of July and November 2020, including another episode where Estrada yelled at him and insinuated that he lacked basic math skills. But Krishnan never again exceeded his eight-hour restriction.

Krishnan exhausted his administrative remedies and filed this action seeking declaratory and injunctive relief as well as damages, attorney's fees, and costs.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute of material fact, entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *See Scott* v. *Harris*, 550 U.S. 372, 380 (2007). If the movant carries its burden of showing that there is no material factual dispute, the non-movant must then point to a genuine dispute of fact in the record in order to survive summary judgement. *See Weaver* v. *Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). For discrimination and retaliation claims, "the question should always be whether the record contains sufficient evidence to permit a reasonable fact finder to conclude that [a prohibited] motive caused the [adverse action]." *Igasaki* v. *Ill. Dep't of Fin. & Prof'l Reg.*, 988 F.3d 948, 958 (7th Cir. 2021).

## ANALYSIS

For the following reasons, USPS is entitled to summary judgment on Krishnan's retaliation claim but not on his claim for failure to accommodate his disability.

**I.      USPS is Entitled to Summary Judgment on Krishnan's Retaliation Claim**

The Rehab Act prohibits retaliation against an employee who engages in statutorily protected conduct. *See Stanek* v. *St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 641 (7th Cir. 2015). A retaliation claim lies where the plaintiff suffered a materially adverse action

6

because he engaged in protected activity. *See Anderson* v. *Donahoe*, 699 F.3d 989, 994–95 (7th Cir. 2012).[2]

It is undisputed that Krishnan engaged in protected activity by making EEO complaints and requests for accommodation. Thus, only the elements of adverse action and causation are at issue.

USPS argues that there is no evidence that Krishnan suffered any materially adverse action, as the record reflects only non-actionable petty grievances. A materially adverse action "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 57 (U.S. 2006) (citing *Washington* v. *Ill. Dept. of Revenue*, 420 F.3d 658 (7th Cir. 2005).

The incidents that Krishnan identifies as adverse actions fall into five main categories: (1) he was yelled at and criticized on four occasions by Howard and Estrada; (2) he received an observation in February 2020 and a route inspection on July 6 without prior notice; (3) he was denied 3996 forms and related assistance on numerous occasions, including June 30 through July 8; (4) he was forced to work past his eight-hour restriction from June 30 through July 6; and (5) on certain days after the July 6 inspection, Krishnan's office work was assigned to other employees.

Under Seventh Circuit precedent, the incidents, taken individually or together, do not amount to material adversity. First, unfulfilled threats, yelling, and mean comments from supervisors do not constitute materially adverse actions. *See Lewis* v. *Wilkie*, 909 F.3d 858, 867–

---

[2] The Rehab Act incorporates the standards of the Americans with Disabilities Act (ADA), *see McCray* v. *Wilkie*, 966 F.3d 616, 620–21 (7th Cir. 2020), and the ADA, Rehab Act, and Title VII all treat retaliation claims identically. *See Malin* v. *Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014) (discussing Title VII retaliation); *Dickerson* v. *Bd. of Tr. of Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (discussing ADA retaliation). Thus, authority under all three statutes applies to the analysis of Krishnan's retaliation claim.

68 (7th Cir. 2018) (slights, unfulfilled threats of discipline not adverse actions). While Krishnan's supervisors offered rude and unconstructive criticism, there is no evidence that any of these confrontations rose beyond "relatively mild epithets" that do not violate the Rehab Act. *Brown* v. *Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012). Certainly, Krishnan has cited no authority indicating that such conduct is harmful enough to dissuade a reasonable employee from engaging in protected activity. *See Stephens* v. *Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).

Second, the February 2020 observation and July 6 inspection were performance reviews. Performance reviews are not adverse actions where the plaintiff is not inappropriately singled out by them. *See Lewis*, 909 F.3d at 870. There is no evidence that Krishnan was singled out inappropriately for either inspection; the evidence instead shows that supervisors may conduct observations at their discretion and that all carriers are subject to annual inspections. Furthermore, even a negative performance review is not a materially adverse action where it has no consequence for the employee. *See Bouhmedi* v. *Plastag Holdings*, 489 F.3d 781, 790–91 (7th Cir. 2007). Here, there is no evidence that Krishnan suffered any consequence following either review. Krishnan's schedule was altered on some days after the July 6 inspection, but there is no evidence that this change negatively affected Krishnan, nor is there evidence that the lack of advance notice or failure to provide observation reports harmed Krishnan. *See Stephens*, 569 F.3d at 790–91 (listing non-harmful and non-actionable employment actions).

Third, Krishnan lacks evidence to support the argument that the denials of 3996 forms and related assistance constitute adverse actions. Krishnan states that he was denied forms and assistance from June 30 through July 8, as well as a few other days in July, August, and November, but he offers no explanation of why this constitutes adverse action other than his own

8

speculation that other employees received more assistance than he did. Additionally, Krishnan admits that he did not exceed his hours restriction on any of these days other than June 30, July 1, July 2, and July 6; it is unclear and unexplained why he would need assistance at all on the other days or why denials of the 3996 forms or related assistance would constitute adverse actions.

Fourth, Krishnan similarly lacks evidence that his hours overages were sufficient to alter the terms and conditions of his employment. Time card records reveal that on June 30, July 1, and July 2, he worked only between seven and twenty-three minutes over his limit and, whether or not he was given 3996 forms, he received assistance each day. There is no evidence of what caused him to incur the minimal overages and, more to the point, these minimal overages are the types of "temporary inconveniences" that do not constitute materially adverse actions. *See Rhodes* v. *Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004), *overruled on other grounds by Ortiz* v. *Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).

As for the July 6 incident—where Estrada conducted a route inspection that lasted almost two hours past Krishnan's eight-hour restriction—it was a one-time event and there is no evidence that Krishnan suffered any consequence from this evaluation at work or otherwise. Krishnan reports that he suffered anxiety and went to the hospital on July 8 but links this only to being denied assistance on the morning of July 8, not the July 6 inspection. Furthermore, Krishnan offers no explanation or authority to show that one bad day, or even one bad week, would deter a reasonable employee from engaging in protected activity. *See Stephens*, 569 F.3d at 790–91 (some evidence of harm or likely harm required to show adverse action based on workplace changes); *Rhodes*, 359 F.3d at 505 (temporary, non-harmful changes not materially adverse).

Fifth, with respect to Estrada changing Krishnan's work schedule, changes in job responsibilities or schedule alone also do not constitute adverse actions, and there is no evidence that the change negatively affected Krishnan where his accommodation was continually provided. *See Formella* v. *Brennan*, 817 F.3d 503, 515–16 (7th Cir. 2016) (being assigned other duties or even menial work not materially adverse); *Griffin* v. *Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (citing cases finding harder work assignments, lateral transfer, increased commute, additional job responsibilities, altered work hours, negative performance evaluations, and reprimands not materially adverse).

Returning to the question whether the evidence in the record as a whole is sufficient to permit a jury to find a materially adverse employment action, the court cannot conclude that it does. Krishnan experienced harsh comments from supervisors, two performance reviews, and temporary changes to his workload and schedule. He did not receive discipline, loss of pay, or a change in job classification or duties that might suggest adverse action. Nor has he provided any evidence that the complained-of incidents caused or were likely to cause harm such that they would dissuade a reasonable employee from engaging in protected activity. As such, USPS is entitled to summary judgment on this claim.

## II. USPS is Not Entitled to Summary Judgment on Krishnan's Failure to Accommodate Claim

USPS next argues that the undisputed evidence shows that it provided Krishnan his requested accommodation of an eight-hour work restriction, thus defeating his failure to accommodate claim under the Rehab Act.

To prevail on a failure to accommodate claim, the plaintiff must show that he was a qualified individual with a disability, which his employer knew of and failed to reasonably

accommodate. *See Sansone* v. *Brennan*, 917 F.3d 975, 979 (7th Cir. 2019).³ After the employee informs the employer of a disability requiring accommodation, the onus is on the employer to initiate an interactive process to determine the appropriate accommodation. 29 C.F.R. § 1630.2(o)(3); *Ozlowski* v. *Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). The employee must aid in this process by providing sufficient information to the employer about the necessary accommodation. *See Brown* v. *Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 824 (7th Cir. 2017). It is undisputed that Krishnan was a qualified individual with a disability. Only the provision of a reasonable accommodation remains at issue.

Krishnan argues that the incidents described above constitute failures to accommodate, but most of these incidents involve his supervisors being rude or critical of his performance, not the eight-hour work restriction. Only the instances on June 30, July 1, July 2, and July 6 when Krishnan worked more than eight hours are relevant to the issue of whether he was accommodated.

USPS argues that it accommodated Krishnan because he was always assigned less-than-eight-hours-worth of work even if he did not complete his assignment on time. USPS also argues that Krishnan received as much assistance as his supervisors deemed necessary and that he could always "call back" in the afternoon to request additional help as needed to finish his shift.

None of this squarely answers the question of whether Krishnan was accommodated. Krishnan's accommodation, as illustrated by the doctor's letter, was a simple eight-hour work restriction. Krishnan's supervisors indisputably knew of this requirement. Yet on June 30, July 1, July 2, and July 6, he worked more than eight hours, with one of these occasions resulting in an

---

³As with retaliation claims, the Rehab Act incorporates the ADA's standards for failure to accommodate claims. *See McCray*, 966 F.3d at 620–21. Thus, authority under both statutes applies to the analysis of Krishnan's Rehab Act claim for failure to accommodate.

11

almost two-hour overage. Rather than explain these overages, USPS doubles down on Estrada's assertion that Krishnan could have finished his assignments within eight hours based on USPS's performance metrics. USPS fails to acknowledge the actual nature of the accommodation that was requested and usually provided. Instead, it tries to re-interpret the simple hours-based restriction as a request for eight-hours-worth of work. But USPS provides no authority for this interpretation, nor does it explain what eight-hours-worth of work even means aside from a few allusions to its performance metrics.

Relatedly, USPS faults Krishnan for not requesting different performance standards in addition to or instead of an hours-based restriction. But there is no indication that Krishnan knew that he needed to frame his request in this way and there is no evidence that Krishnan's doctor knew about USPS's performance metrics or how to convert a time-restriction to performance-metrics terms. Moreover, time card records show that Krishnan almost always finished his shift in eight hours, suggesting that Krishnan did not need to request different performance standards; it was only June 30 through July 6 where his time-restriction accommodation was not met for reasons that remain unclear. Even if a performance-based accommodation was necessary, the duty to determine that did not fall solely on Krishnan. USPS also has a duty to engage in the interactive process to determine the appropriate accommodation, and it has not shown that it did so here. *See Rowlands* v. *United Parcel Serv.-Ft. Wayne*, 901 F.3d 792, 801 (7th Cir. 2018).

In summary, USPS has not met its burden of showing that no reasonable jury could conclude that it failed to accommodate Krishnan's disability based on the eight-hour work restriction. This result is not incongruous with the outcome on the retaliation claim, for a failure to accommodate claim may survive in the absence of a materially adverse action, unlike a retaliation claim. *See EEOC* v. *AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010). Thus,

Krishnan may show a failure to accommodate even where no reasonable jury could find that he suffered retaliation.

As an aside, the court is somewhat skeptical that the June 30 through July 6 overages constitute actionable failure to accommodate given that most of the overages were under thirty minutes and that Krishnan admittedly received his accommodation after this period. *See Scheidler* v. *Indiana*, 914 F.3d 535, 542 (7th Cir. 2019) (one-time event where employee's accommodation was violated insufficient to survive summary judgment); *Hatter* v. *Williams*, 844 F. App'x 870, 874 (7th Cir. 2021) (limited breach of accommodation insufficient where plaintiff ultimately received accommodation). Still, in some instances, a "single event" might support a failure to accommodate claim. *Scheidler*, 914 F.3d at 542. But neither party has addressed this argument, and the court is not obligated to make their arguments for them. *See United States* v. *Alden*, 527 F.3d 653, 664 (7th Cir. 2008).

For these reasons, USPS's motion for summary judgment on Krishnan's failure to accommodate claim is denied.

## CONCLUSION AND ORDER

USPS's motion for summary judgment (dkt. 25) is granted in part and denied in part. The motion is granted as to Krishnan's race, gender, and national origin discrimination claims (Counts I, II, and III) and his retaliation claim (Count IV); and the motion is denied as to his failure to accommodate claim (Count V). This case is set for status on 7/26/2022 at 11:00 a.m. In the meantime, the parties are directed to engage in serious discussion concerning whether the case can be resolved without further litigation.

Date: July 1, 2022

_____
U.S. District Judge Joan H. Lefkow